CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 31 2008

JOHN F. CORCORAN, CLERK
BY: _____
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

JOHN W. HALL,                          )
                                       )
    **Plaintiff,**             )
                                       )
                                       )   Civil Action No. 7:07cv590
v.                                     )
                                       )
MICHAEL J. ASTRUE,                     )   By:   Michael F. Urbanski
**Commissioner of Social Security,**   )         **United States Magistrate Judge**
                                       )
    **Defendant.**             )

## REPORT AND RECOMMENDATION

Plaintiff John W. Hall ("Hall") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act"). On appeal, Hall contends that the Administrative Law Judge ("ALJ") erred by failing to accord adequate weight to the opinion of Hall's treating physician, failing to comply with the required technique for analyzing mental impairments, and relying on testimony from the vocational expert, which was not based on a proper hypothetical question. Hall further contends that this case should be remanded for reconsideration of the disability onset date in light of new evidence documenting that the Commissioner found Hall disabled in a subsequent application.

Having reviewed the record, the undersigned finds that the ALJ failed to give adequate weight to the opinion of Hall's treating physician, Dr. Vascik. Additionally, there may be an inconsistency between the denial of disability benefits in this case and the grant of benefits in a subsequent application based on the same alleged physical limitations only one day after the ALJ's unfavorable decision. Therefore, the

undersigned recommends that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent herewith.

## I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance.

Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Hall was born in 1966, (Administrative Record, hereinafter "R." 16, 57, 72), and at the time of the ALJ's decision was considered a "younger individual" under the Act. 20 C.F.R. §§ 404.1563(b), 416.963(b). Hall has an eighth grade education but states he can read and write. (R. 16, 121, 128, 288.) Prior to the alleged onset date, Hall performed manual labor for the Town of Pulaski, and previously worked as a paving equipment operator and a church furniture installer. (R. 16, 77, 128, 281, 285-86, 287.) Although Hall did return to work at the City of Pulaski with light duty restrictions after the alleged onset date, there was no light duty work available to him, and the ALJ found that Hall's work after September 30, 2005 did not qualify as substantial gainful activity under the Act. (R. 16.)

Hall alleges a disability onset date of September 30, 2005, due to back, left leg and ankle problems, status post-back surgery, as well as depression, mood swings, and migraine headaches. (R. 16, 76.) His application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ on March 7, 2007. (R. 275-332.) In determining whether Hall was disabled under the Act, the ALJ found that Hall had medically determinable impairments, including lumbar degenerative disc disease, status-post April 2005 L5 laminectomy, post surgical L4-5, L5-S1 fusion causing moderate impingement of the S1 nerve root, that qualify as severe impairments pursuant to 20 C.F.R. §§ 404.1520(c), 416.920(c). (R. 19.) The ALJ also found that Hall has the RFC to lift and/or carry 20

4

pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight hour workday, sit for up to six hours with normal workday breaks, occasionally perform pushing and/or pulling with the lower extremities, occasionally climb ramps and stairs, occasionally balance, stoop, crawl, and frequently kneel and crouch. (R. 22.) The ALJ further held that Hall should not climb any ladders, ropes, or scaffolds, and should avoid exposure to hazards such as heights and moving machinery.[2] (R. 22.) Finding there are a significant number of jobs in the national economy that he can perform, the ALJ held that Hall is not disabled under the Act. (R. 24-25.) The Appeals Council denied Hall's request for review and this appeal followed. (R. 5-8.)

Hall filed a subsequent application for disability insurance benefits and supplemental security income. On February 24, 2008, the Commissioner granted Hall benefits as of June 20, 2007, the date after the ALJ's unfavorable decision in the instant case, but stated that he could not find Hall disabled prior to the ALJ's decision. (Def.'s Br. 18; Pl.'s Br. 4, Ex. A-2.)

### III

On appeal, Hall argues that the ALJ erred by failing to give adequate weight to the opinion of his treating physician, Dr. Vascik. In his decision, the ALJ recognized that, "[o]rdinarily the opinion of a treating physician is to be given substantial, and in certain circumstances, controlling weight," and can be discounted only if inconsistent with the record as a whole, unsupported by evidence, or merely conclusory. (R. 21.) However, the ALJ went on to hold that he "must consider the possible biases that a

---

[2] In his opinion, the ALJ stated that Hall "should climb any ladders, ropes, or scaffolds, and should avoid exposure to hazards such as heights and moving machinery." (R. 22.) This finding makes little sense in the context of this paragraph and was likely made in error. The undersigned finds the ALJ intended to hold that Hall should *not* climb ladders, ropes or scaffolds, which finding is consistent with the hypothetical posed to the vocational expert during the administrative hearing. (R. 317.)

treating physician may bring to a disability evaluation," finding that a treating physician "may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." (R. 22.) Thus, the ALJ gave Dr. Vascik's opinion only slight weight. (R. 22.)

## A.

In the administrative decision, the ALJ cites Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir. 1985), for the notion that Dr. Vascik's opinion should be discounted because of his inherent bias. (R. 22.) In Stephens, plaintiff argued that the ALJ erred by giving special weight to the reports of a consulting orthopedic surgeon and neurologist, claiming the ALJ should have given special weight to the reports of his treating general practitioner and chiropractor. Id. at 288. Relying on Allen v. Weinberger, 552 F.2d 781, 786 (7th Cir. 1977), plaintiff argued that the report of his treating physician should control. 766 F.2d at 288. The Stephens court found that Allen did not stand for the proposition that a report of a treating general practitioner controls whenever physicians disagree. Id. at 288. Instead, the court found that Allen holds that when a treating physician's experience backed by observation is set against the speculative statement of a consulting physician, substantial evidence lies on the side of the treating physician. Id. at 288-89. The Stephens court then speculated on the other hand that a "patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." Id. at 289 (citing Cummins v. Schweiker, 670 F.2d 81, 84 (7th Cir. 1982), which hypothesizes that a personal physician might have been "leaning over backwards" to support an application for disability benefits). In contrast, "[a] consulting physician may bring both impartiality and expertise." Id. at 289. In light

of the conflicting opinions of the consulting specialists and the general practitioner, the Stephens court found that the ALJ was entitled to favor the specialists' reports over those of the treating physician and chiropractor. Id. at 289.

The Seventh Circuit commented on its Stephens opinion in Micus v. Bowen, 979 F.2d 602, 608 (7th Cir. 1992), and noted with respect to the observations in Stephens that "it is necessary to understand the factual backgrounds against which they were made." 979 F.2d at 608. In Stephens, the ALJ had reports by at least eleven medical professionals, including three doctors to whom the ALJ had sent Stephens for evaluations. Micus, 979 F.2d at 608; Stephens, 766 F.2d at 286. The Micus court distinguished its case from Stephens, noting that it was not a case of dueling doctors and did not "involve experts with a thorough knowledge of a disease versus a perhaps parochial and biased general practitioner." 979 F.2d at 608. The Micus court went on to hold, "Stephens does not obliterate earlier law in this circuit dealing with the respect which should be afforded the uncontested opinion of the treating physician. Stephens, after all, dealt with the respect due a *contested* opinion." 979 F.2d at 608 (emphasis in original).

There is simply no basis for an ALJ to reject a treating physician's opinion based on unsupported conjecture of bias. There is not a shred of evidence in this case to suggest bias on the part of Dr. Vascik, and any such suggestion is completely unfounded. Unlike Stephens, this case does not involve dueling doctors. Rather, the only evidence of record to refute the RFC assessment by Dr. Vascik, Hall's treating neurosurgeon, is from two state agency physicians performing record reviews prior to June 20, 2006. See discussion, infra, § III(b) & (c). Stephens is distinguishable on its facts and cannot be

cited for the bald proposition that treating physicians' opinions are inherently biased, as the ALJ's decision suggests.[3] The ALJ erred in suggesting that Dr. Vascik's opinion is entitled to only slight weight due to his "possible biases." (R. 22.)

**B.**

Moreover, substantial evidence does not support the ALJ's finding that Dr. Vascik's opinions are not fully supported by the medical records. The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...."); Social Security Ruling ("SSR") 96-2p.

The ALJ is to consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the

---

[3] In fact, Stephens has only been cited once in the 4th Circuit and not for the speculative proposition that treating physicians are biased. Hanna v. Sullivan, 927 F.2d 595 (unpublished table opinion) (4th Cir. 1991).

diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," Mastro, 270 F.3d at 178, and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("[T]he notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also Kratzer v. Astrue, No. 5:07cv00047, 2008 WL 936753, at *7 (W.D. Va. 2008) (noting the ALJ is expressly obligated to explain the consideration given to his opinions).

Dr. Vascik, a neurosurgeon, treated Hall from approximately April, 2005, to at least July, 2007. On April 4, 2005, Vascik stated Hall reported being hurt in January, 2005, while sitting in a front-end loader moving snow. (R. 186, 213.) Hall complained of back pain predominately on his right side, shooting down his left buttock and left leg into his calf area. (R. 186, 213.) Dr. Vasick diagnosed Hall with a left L4-5 disc rupture, noting, "part of the disc is pushed backward and the neural foramina and the nerve root on the left are compressed." (R. 186, 213.) Dr. Vascik recommended lumbar diskectomy, left L4-5. (R. 186.) Having exhausted all non-surgical options, Hall decided to move forward with surgery. (R. 187, 213, 229.)

Dr. Vascik performed extensive left L4-5 hemilaminotomy, mesial facetectomy, and diskectomy on April 22, 2005. (R. 187-88.) Following surgery, Dr. Vascik prescribed Percocet for pain. (R. 212, 217, 218.) On April 28, 2005, pursuant to Hall's inquiry as to when he could return to work for the City of Pulaski, Dr. Vascik stated, "I told him if he progresses really, really well the fifth week after surgery he might be able to go back and ride a front-end loader or mower as long as there is no heavy lifting. Even at that point, the fifth week he will be restricted to 40 pounds." (R. 212.)

On May 19, 2005, Dr. Vascik noted that Hall reported feeling some pain when pushing the clutch of his five-speed truck, but noted that the majority of his preoperative pain was gone. (R. 210.) On June 2, 2005, Dr. Vascik indicated that he was releasing Hall to work the following Monday, June 6th, with a 40 pound weight restriction for the first month. (R. 208, 209.) At an office visit on July 7, 2005, notes indicate that Hall spent his first week back at work riding a large tractor/lawn mower used to cut grass on the side of the highway, the second week he spent in a dump truck, and the next week he was bent over shoveling asphalt, which was "killing him." (R. 206.) Hall reported stiffness and paraspinous muscle spasm. (R. 206.) Upon examination, Dr. Vascik found paraspinous muscle spasm, and noted that Hall needed a job that does not involve bending and lifting. (R. 206.) Dr. Vascik renewed his Percocet prescription and added Valium to his medication regimen. (R. 206, 215.) Hall was issued a disability certificate which stated he could work on a mower or a truck but could not bend or lift until his next appointment. (R. 207.)

On August 4, 2005, Hall reported pain in his low back. (R. 204.) His light duty job at the City of Pulaski involved driving a dump truck with his hand on the wheel and

his head over the driver's side monitoring the sweepers on the curb. (R. 204.) Dr. Vascik stated this was a "horrible position" and noted that, if this job is light duty, "I would hate to see what heavy duty is." (R. 204.) Dr. Vascik prescribed a TENS unit and stated that if Hall still is not able to perform his job after a month, he needs to apply for disability. (R. 204.) His Valium and Percocet prescriptions were refilled as well. (R. 204, 214.) On September 1, 2005, Hall presented to Dr. Vascik's office at an unscheduled appointment, complaining of pain. (R. 201.) Dr. Vascik injected his right SI joint with Depo-Medrol and Marcaine. (R. 201.) He was issued a disability certificate which stated he could not return to work until Tuesday, September 5, 2005. (R. 203.) On the same day, Dr. Vascik wrote a letter to the supervisor at the Town of Pulaski indicating that Hall's work duty is exceeding his limitations and asking that they restrict him to light duty work. (R. 202.)

On October 4, 2005, Hall returned to Dr. Vascik's office reporting that the Town of Pulaski had laid him off, stating he needed to come back to work with no restrictions or not to come back at all. (R. 200.) Dr. Vascik stated he saw no future possibility for surgery and noted that Hall's job description contained all heavy lifting. (R. 200.) Dr. Vascik further stated that he did not think he would ever be able to let Hall go back to full, unrestricted employment. (R. 200.) Hall was given a disability certificate keeping him out of work from October 10, 2005 until approximately November 28, 2005, as he underwent physical therapy. (R. 224.)

Hall presented to Dr. Vascik on November 1, 2005, and notes reveal he "continued to be miserable." (R. 199.) An MRI revealed postsurgical changes but no new disc rupture. (R. 199.) Because there was nothing surgically to do about Hall's

continued pain, Dr. Vascik referred him to a pain management specialist, Dr. Wilson, and prescribed a brace and Lorcet. (R. 199.) The same date, Dr. Vascik completed a Physician's Report for the Virginia Retirement System, indicating that Hall was physically incapacitated for the further performance of duty and the incapacity was likely to be permanent. (R. 220.)

Hall returned to Dr. Vascik's office on March 30, 2006, complaining of pain in his back, left buttock, down to his calf, which had a burning quality. (R. 198.) Dr. Vascik noted Hall may be developing a peripheral neuropathy kind of problem. (R. 198.) He also had severe paraspinous muscle spasm, "quite a bit on the right but a compulsory scoliotic curve between the lower thoracic and lumbosacral spine, so the curve actually goes over to the right and is obviously visually as well as by palpation." (R. 198.) Dr. Vascik reported that Hall could flex forward 45 degrees and extend 10 degrees before experiencing incapacitating pain, and that he limps when he walks. (R. 198.) Dr. Vascik opined that Hall cannot perform manual labor, especially the kind the Town of Pulaski requires. (R. 198.) Hall showed Dr. Vascik a letter stating the Town of Pulaski would terminate him as of April 3, 2006 if he did not return to work. (R. 198.) Dr. Vascik reiterated on March 30, 2006 in a Physician's Report for the Virginia Retirement System that Hall is permanently physically incapacitated. (R. 238-39.)

On September 11, 2006, Hall returned to see Dr. Vascik and stated he believed he was injured after trying to start a chain saw. (R. 265.) He related that he had originally attributed his severe pain to snow shoveling and it had not occurred to him that the pain grew much worse with the chain saw accident. (R. 265.) On January 18, 2007, Dr. Vascik noted, "[t]he bottom line here is not when the patient was hurt but if he is hurt and

12

Case 7:07-cv-00590-SGW-mfu    Document 21    Filed 12/31/08    Page 12 of 24    Pageid#: 100

I certainly think he is." (R. 263.) Dr. Vascik further stated Hall "cannot do the job for which he has been trained ... and [he] has no other training in which to fall back on." (R. 263.) Dr. Vascik agreed to wait until March to see if Hall received insurance coverage so Dr. Vascik could treat him aggressively with physical therapy. (R. 264.)

In a letter to Plaintiff's counsel dated February 13, 2007, Dr. Vascik reported Hall can:

> [S]tand, can walk for two hours out of an eight-hour day. He can sit without shifting positions no more than an hour. If he is allowed to shift positions, standup, sit back down and so forth he should be able to sit for four hours out of an eight hour day. He should not be lifting over 20 pounds on a continuous basis or 30 pounds on an infrequent basis. He should not be bending, twisting or flexing forward at any time. The patient can climb simple flights of stairs to get from one part of his home or office to another, but he should not be forced to climb a ladder or climb stairs repetitively.
>
> If the patient is returned to an eight hour work day he will need to be allowed to change positions frequently, probably every 15 or 20 minutes. So if he is sitting he will need to stand for a minute or two and the[n] he can resume sitting. If he is standing he may need to sit down for a few minutes before he can continue standing and walking. I also believe he will need four 10 minute rest breaks in an eight hour day.

(R. 262.)

Dr. Vascik is a specialist in the field of neurosurgery. He offered diagnostic and clinical support for his opinions regarding Hall's ability to work, and he had a lengthy ongoing physician-patient relationship with Hall. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Nevertheless, in his June 19, 2007 decision, the ALJ gave Dr. Vascik's opinion little weight, noting Dr. Vascik's possible bias in favor of his patient and stating, "Dr. Vascik's most recent, February 2007 conclusion regarding the claimant's functional

abilities are not fully supported by the medical evidence, and is only given slight weight in this decision." (R. 22.)

On July 9, 2007, Dr. Vascik responded to the denial of disability benefits by the ALJ and, specifically, the ALJ's allegation that Dr. Vascik may render an opinion "to do a favor for a friend." (R. 271-72.) The undersigned considers this evidence, which was presented to the Appeal's Counsel and incorporated into the record, pursuant to Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93 (4th Cir. 1991) ("[W]e must review the record as a whole, including the new evidence [presented to the Appeal's Council], in order to determine whether substantial evidence supports the Secretary's findings.").

With respect to the ALJ's claim that Dr. Vascik may "want to do a favor" for Hall, (R. 22), Dr. Vascik wrote, "That is ridiculous. This is a patient. I am not doing him a favor and I have not said he is disabled. I have indicated what he can do based on my evaluation of this patient." (R. 271.) Furthermore, Dr. Vascik stated that he re-examined Hall in detail and found him to have significant paraspinous muscle spasm in the thoracolumbosacral area and essentially no lumbar lordotic curve. (R. 271.) He also noted that Hall can extend 10 degrees and forward flex 45 degrees, at which point he has serious pain in the back and down his left leg. (R. 271.) Dr. Vascik stated Hall continued to have the same limp and antalgic gait favoring his left leg no matter where he walks. (R. 272.) Dr. Vascik reiterated that Hall cannot perform an eight hour per day, forty hour per week job, as he is having difficulty performing activities of daily living much less work eight hours per day. (R. 272.) He prescribed a back brace and cane, as "[t]he left

Case 7:07-cv-00590-SGW-mfu   Document 21   Filed 12/31/08   Page 14 of 24   Pageid#: 102

leg gives out so much that I am afraid this man is going to fall and do some serious injury to himself." (R. 272, 273.)

Based on this record, substantial evidence does not support the ALJ's determination that Dr. Vascik's opinion is unsupported by medical evidence.

## C.

The Commissioner claims Johnson v. Barnhart, 434 F.3d 650, 656 n.8 (4th Cir. 2005), supports the ALJ's determination that Dr. Vascik's opinion is not entitled to great weight. Specifically, the Commissioner points to footnote 8 of the opinion, which states, "Even if we were to consider Dr. Cavender's March 2002 assessment, substantial evidence supports the ALJ's finding that it is unreliable because it inexplicably conflicts with other medical evidence." Id. at 656 n.8. In Johnson, Dr. Cavender, a treating physician, filled out a "physical capacities Questionnaire and Assessment" on March 26, 2002 – nine months after Johnson's last insured date of June 30, 2001. Id. at 657. There was no evidence of record to show that the impairments observed by Dr. Cavender in 2002 existed prior to June 30, 2001. Thus, the court found no merit to Johnson's argument that the ALJ failed to give proper weight to Dr. Cavender's 2002 assessment. Furthermore, the court held that even if it were to consider Dr. Cavender's 2002 assessment, substantial evidence supports the ALJ's finding that it is unreliable because it inexplicably conflicts with other medical evidence of record. Id. at 657 n.8. Johnson is entirely distinguishable from the case at hand. In the instant case, the relevant opinions from Dr. Vascik were not rendered after Hall's date last insured, December 31, 2009. (R. 72.) Instead, Dr. Vascik's findings were consistent over the course of his treating

relationship with Hall, and they support his RFC assessment. Moreover, as noted below, other evidence of record supports Dr. Vascik's findings. Thus, Johnson is inapposite.

The Commissioner also claims that the ALJ properly discounted Dr. Vascik's opinion because Dr. Vascik offered "a number of different opinions about Plaintiff's ability to work." (Pl.'s Br. 13.) Specifically, the Commissioner points to the fact that Dr. Vascik cleared Hall to return to his job on light duty status just seven weeks after his surgery, (R. 208); that one month later, Dr. Vascik noted that Hall could work better if he did not have to perform bending, lifting, shoveling and twisting, (R. 206); and that the following month, Dr. Vascik stated that Hall would benefit from retraining, as there were many light duty jobs that he could perform. (R. 204.) However, all three of these notes from Dr. Vascik were taken months prior to Hall's alleged onset date, September 30, 2005. Additionally, the Commissioner highlights that in January, 2007, just one month before he issued his disabling functional capacity assessment, Dr. Vascik noted that the vocational rehabilitation and retaining associated with workers' compensation would have been beneficial to Hall. (R. 263.) However, considering the entire report in context, Dr. Vascik found that Hall would like to be productive, however, "he cannot do the job for which he has been trained . . . and has no other training in which to fall back on." (R. 263.) Dr. Vascik noted Hall continued to experience pain, and had paraspinous muscle spasm in the thoracolumbosacral spine. (R. 263.) He also stated that without insurance coverage, Hall's treatment options were limited. (R. 263.)

Additionally, other evidence of record supports Dr. Vascik's findings. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (finding a treating physician's opinion is entitled to controlling weight if well supported and not inconsistent with other

substantial evidence in the record). Indeed, an MRI of the lumbar spine taken on October 22, 2005, reveals a moderate central and left pericentral epidural fibrosis with mild diffuse central disc bulge, as well as moderate impingement of the left L5 nerve root just distal to its origin from this fibrosis, and mild central canal stenosis at this level secondary to fibrosis, disc abnormality and mild facet joint athropathy. (R. 162, 242.) At L5-S1, there is a small central anterior epidural fibrosis causing mild impingement of the left S1 nerve root at its origin. (R. 162, 242.)

Dr. Wilson, the pain management specialist to whom Dr. Vascik referred Hall, noted on November 9, 2005 that Hall's films showed fibrosis and degenerative changes and post-surgical changes, and further stated that he did not think Hall had any curable condition. (R. 196, 258.) Upon examination, Hall had a decreased range of motion secondary to complaints of pain. (R. 196, 258.) Dr. Wilson diagnosed Hall with chronic degenerative back pain and radiculopathy secondary to the post surgical changes and general degenerative change. (R. 196, 258.) Dr. Wilson recommended Hall begin taking Diclofenac and Percocet in an effort to reduce pain levels and aimed to get him back into some therapy. (R. 196, 258.) Dr. Wilson further noted that Hall was currently on a short-term disability type of situation and "may need to convert to long-term disability as he may not be able to return to his work as a maintenance worker at the town of Pulaski." (R. 196-97, 258-59.)

On November 16, 2005, Wilson recommended that Hall apply for Virginia Retirement System Disability benefits, as the job description Hall was performing was "likely beyond his functional capacities even if he does well with treatment." (R. 195, 257.) Dr. Wilson characterized his back as "fairly abnormal" from his perspective and

stated he anticipated continued symptoms regardless of treatment. (R. 195, 257.) He concurred with Dr. Vascik's opinion that Hall is not surgically curable. (R. 195, 257.) Dr. Wilson started Hall on Oxycodone and prescribed Percocet for breakthrough pain, in addition to the Diclofenac. (R. 195.)

After Hall complained of nausea with Oxycodone use, Dr. Wilson increased his Percocet prescription on November 30, 2005. (R. 194, 256.) On December 14, 2005, Dr. Wilson noted that Hall's MRI showed significant degenerative changes at L4-5 and L5-S1, along with post surgical changes in the second MRI scan from October. (R. 193, 255.) Hall reported continued back pain and radiculopathy with some pain along the area of the surgical incision up to the right side. (R. 193, 255.) Dr. Wilson injected him with Xylocaine and Depo Medrol and noted that, in all likelihood, Hall would not be able to return to previous employment. (R. 193. 255.) Dr. Wilson stated, "He certainly has exploitable functional capacity but I don't believe it is within that level of duties and he may not have the intellectual capacities and sophistication required for non-manual labor." (R. 193, 255.)

On January 11, 2006, Dr. Wilson noted:

> Unfortunately, this man is well suited to the manual labor and menial tasks that he is currently doing intellectually, unfortunately, physically he has this chronic lumbar radiculopathy that failed to be controlled from surgery which is more typical than is widely understood and he is pretty much stable at this point.

(R. 192, 254.) On February 8, 2006, notes reveal that pain medication helps Hall but with any activity involving twisting or extension of the lumbar spine, his radiculopathy flares. (R. 191, 253.) Dr. Wilson found that Hall had a difficult time understanding that his job that he likes is no longer one for which he is suited. (R. 191, 253.) Specifically,

Dr. Wilson stated, "Mr. Hall is a very simple and unsophisticated gentleman and not likely suited to much other than manual labor. . . ." (R. 191, 253.)

On May 22, 2006, Dr. Wilson's notes indicate that Hall continued to have chronic degenerative back pain and was now complaining of increasing left knee pain and radicular type pain in the left leg and foot. (R. 251.) Dr. Wilson counseled Hall that "this back pain is something that is going to continue long term." (R. 251.) On August 31, 2006, Hall complained of right-sided radicular pains. (R. 250.) Dr. Wilson continued him on Percocet. (R. 250.) On February 16, 2007, Dr. Wilson recommended epidural steroid injections, which Hall refused along with any additional treatment for financial reasons, and instead Dr. Wilson prescribed a predisone taper as a "poor man's attempt at epidural steroid injection." (R. 266.)

In finding Hall not to be disabled, the ALJ relies on the opinions of two state agency physicians. The first opinion, rendered on February 8, 2006 by Thomas Phillips, M.D., states that Hall can occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, sit, stand and/or walk about six hours in an eight hour workday, with limited pushing and pulling with lower extremities. (R. 168-75.) On June 20, 2006, Richard Surrusco, M.D., also reviewed the records and agreed with Dr. Phillips' RFC assessment. (R. 231-37.) Based on this RFC assessment and the testimony of the vocational expert ("VE"), the ALJ found that Hall could perform a variety of unskilled jobs such as cashier, general office clerk, food and counter worker, kitchen worker, unarmed watchman, and retail worker, all of which exist in a significant number within the regional and national economy. (R. 23, 318.) However, the VE testified that no jobs exist for an individual with the RFC outlined by Dr. Vascik:

Q. Mr. Williams, if we use Dr. Vasic's [sic] limitations of no more than two hours total [in] an eight-hour day standing and walking and not more than four hours total in an eight-hour day sitting, that would eliminate any of the sedentary jobs you just named, right?

A. That's correct.

Q. In fact, again, it basically eliminates competitive full-time work?

A. That's correct.

(R. 330-31). Notwithstanding the numerous clinical findings of Drs. Vascik and Wilson in the latter half of 2006 and in 2007, and Dr. Vascik's RFC assessment of February 13, 2007, state agency physicians did not review any other medical records after June, 2006. (R. 262.)

As such, the undersigned cannot find that the ALJ's opinion is supported by substantial evidence. Thus, the undersigned recommends that this case be remanded pursuant to sentence four of 42 U.S.C. § 405 (g) for further proceedings.

## IV

Furthermore, Hall argues that this case should be remanded for reconsideration of the disability onset date in light of new evidence documenting that the Commissioner found Hall disabled in a subsequent application as of the date after the ALJ's unfavorable opinion. The undersigned agrees.

Based on Hall's subsequent application for disability insurance benefits and supplemental security income, the Commissioner found him disabled under the Act as of June 20, 2007, the day after the ALJ rendered his unfavorable decision. (See Pl.'s Br. Ex. A-B.) However, the ALJ declined to find Hall disabled as of his claimed initial onset date of September 30, 2005. This subsequent application was based on the same

20

evidence and medical records presented to the Commissioner in the instant case. (See Pl.'s Br. Ex. A-2.)

Pursuant to 42 U.S.C. § 405(g), a reviewing court may remand a case to the Commissioner upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Evidence is new if it is relevant to the determination of disability at the time the application was first filed and not merely cumulative. Borders, 777 F.2d at 955; see also Wilkins, 953 F.2d at 96 ("Evidence is new within the meaning of this section if it is not duplicative or cumulative."). It is material if there is a reasonable possibility that the new evidence would have changed the outcome. Borders, 777 F.2d at 955; Wilkins, 953 F.2d at 96. There must be a good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner, and the claimant must present to the remanding court at least a general showing of the nature of the new evidence. 42 U.S.C. § 405(g); Borders, 777 F.2d at 955.

In the instant case, the Commissioner's decision to grant disability benefits on a subsequent application one day after the ALJ's unfavorable decision constitutes both new and material evidence. See Hayes v. Astrue, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007) (Jones, J.) ("[W]here a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence."); Reichard v. Barnhart, 285 F. Supp. 2d 728, 734 (S.D.W.Va. 2003) (finding the ALJ's decision granting disability benefits less than a week after he first pronounced claimant was not

Case 7:07-cv-00590-SGW-mfu   Document 21   Filed 12/31/08   Page 21 of 24   Pageid#: 109

disabled is new and material evidence). While the grant of benefits in a subsequent application is not preclusive evidence as to a prior application, it is new and material evidence warranting a remand. Hayes, 488 F. Supp. 2d at 565 (citing Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001)); see also Wilkins v. Sec'y Dept. Health & Human Servs., 953 F.2d 93 (4th Cir. 1991). The Commissioner's decision regarding Hall's subsequent disability application granted him benefits as of the date after the ALJ's unfavorable decision at issue in this case. Hall claims, and the Commissioner does not contest, that the Commissioner found him to be disabled on June 20, 2007, based on the same medical records that were before the ALJ on the initial application. (Pl.'s Br. 5.) Thus, the Commissioner's subsequent decision is highly relevant to the determination of disability in this case. As the court held in Reichard,

> [T]here is a reasonable possibility that the evidence considered by ALJ Conover in reaching his second decision might well have changed the outcome in this case as it was before him the first time. It is not in any way evident from the current record in this case how Claimant became disabled less than a week after ALJ Conover's first decision.

285 F. Supp. 2d at 734. There is good cause for the failure to incorporate this evidence into the record during the prior proceeding, as the ALJ's initial determination became final when the Appeals Council denied Hall's request for review on October 23, 2007, (R. 5-8), and the Commissioner did not render a favorable opinion on Hall's subsequent application until February, 2008. (Pl.'s Br. Ex. A-2.) Finally, Hall has presented the court with a general showing of the nature of this new evidence. (Pl.'s Br. Ex. A, A-2.)

There is a possible inconsistency between the denial of disability benefits and the subsequent grant of benefits based on the same alleged physical limitations only one day

after the ALJ's unfavorable decision. Therefore, the undersigned recommends that, on remand, the Commissioner consider all of the evidence, including Dr. Vascik's opinion and the later award of benefits, in determining whether an earlier disability onset date is warranted. See Hayes, 488 F. Supp. 2d at 565.

V

It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence does not support the Commissioner's decision, as the ALJ did not give proper weight to the opinion of Hall's treating physician. Additionally, there is a potential inconsistency between the denial of disability benefits and the subsequent grant of benefits based on the same alleged physical limitations only one day after the ALJ's unfavorable decision. Accordingly, the undersigned recommends that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent herewith.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 31st day of December, 2008.

Hon. Michael F. Urbanski
United States Magistrate Judge